May it please the Court, my name is Bob Udzila. I represent the plaintiff, Rodney Englert, in this case before you. This is the second time that this case is before this Court. The first time was on an appeal from the district court's denial of defendant's anti-SLAPP motions to strike the plaintiff's pleadings. The district court, in its first opinion and order, denied several of those motions and the defendants appealed. And on the first appeal, this Court found no appellate jurisdiction and simply sent the case back down. But in doing so, in the first opinion and order, because under Oregon's anti-SLAPP statute, once that motion is filed, a plaintiff must come forward with a prima facie case of defamation. In denial of that, Judge Aiken said that Englert, the plaintiff, had provided evidence of a long history of Defendant MacDonnell's statements assaulting his character, qualification, and veracity, all of which are capable of defamatory meaning. That was in the first opinion and order that's on our exceptor record at page 53, Your Honor. On remand, really the only things that took place in terms of additional evidence were a deposition of Mr. Englert and a deposition of Mr. MacDonnell. There may have been other things, but basically the 12 statements that we're talking about here in this appeal were before the district court the first time when she made her decision that Mr. MacDonnell's statements were defamatory. Without oral argument and without any indication as to why, there was some difference between those 12 statements the first time. And the second time, Judge Aiken held that all 12 of them were nondefamatory and therefore granted Defendant's motion for summary judgment. And that's why we're here today to decide whether that was a correct decision. She didn't tell us why. I know she didn't have to, Your Honor. She didn't really have to, but it would have perhaps been helpful to understand why it is that the same kinds of statements were defamatory the first time around but not the second time around. Is that the same standard for the slap suit? I thought she applied a different standard to the analysis. Your Honor, in a real sense, the standard of review on the issue of particularly two of these statements, it really doesn't make any difference. The court decides as a matter of law whether that statement is defamatory. So we're not talking about whether the plaintiff has presented clear and convincing evidence of a defamation statement or that the jury can decide that there was clear and convincing evidence.  evidence of a defamation statement. Is this statement defamatory? That's basically what the issue is. Well, just a minute, though. Before you get there, whether it's defamatory or not, does it partly depend on whether the plaintiff is a public figure? It partly could depend on whether a plaintiff is a public figure, Your Honor, in this And then if the panel decides that question in favor of the defendant, the other issues become academic, right? That's correct, Your Honor. I mean, if we lose on actual analysis, we lose the case because even if the statements are defamatory, the defendant has a privilege that he has not violated according to the court's review. Why don't you concentrate your next portion of your argument on why you think that you client is not a limited public figure or a public figure at all, if that's your position? It is our position, Your Honor, and the reason is, first of all, the status of public figure has to be in place before the alleged controversy that brings about the status of public figure exists. Mr. McDonnell started his campaign against the plaintiff in 1993. But wasn't your client at least a prominent figure in his field? And he had made efforts, as any consultant would do, to promote himself and his abilities, including outreach to the media and the like. He had been involved in a number of very high-profile trials. So he was certainly prominent in his field. I don't know if that makes him a limited public figure or not. I don't think that's enough, Your Honor. In the cases that were cited anyway, the Supreme Court case in Hutchison v. Proxmire and the Fourth Circuit case I believe is called Pennington, he's got to be prominent in the controversy that is of public concern. What is the controversy of public concern here? We don't know what the controversy of public concern is here, and that is the problem. Well, here's what I have. When I was reading this matter, I was wondering whether there is a claim here that blood splatter evidence, which is what your client is an expert on and what McDonnell is an expert on, that's what they testify to, right? Is blood splatter evidence in the field of Dobert admissibility inadmissible? Admissible? Is it like fingerprint evidence? No. What's the controversy? Is there a controversy as to blood splatter evidence? If there is, it's not demonstrated on this record. The controversy is, is that Mr. McDonnell and the other defendants who are now out of the case want him out of the business. To my reading of both records, Your Honor, nobody has come forward and said that the reason there is a public controversy is because Mr. Englert does it differently than we do. The reason there's a public controversy as to Mr. Englert is because they've attacked him and said he's a perjurer. And he's a liar. He's a liar, that he's dishonest, he's the Osama bin Laden of blood splatter evidence. They've said all of these things. Well, I hope he's better off than Osama bin Laden today. How ironic. How ironic, Your Honor. But it demonstrates in terms of whether or not these statements are defamatory, certainly how words such as the Osama bin Laden of blood splatter evidence can bring about such hate and attribution of hate. Is it claim that your man says the blood splatter evidence is not real, it's junk science, it's phony, and defense attorneys, pardon me, defense expert witnesses such as McDonnell use it, but it really doesn't exist? Is that the controversy? If you wanted to look for a controversy somewhere in this record, my belief is that Mr. McDonnell believes that people who don't have hard science degrees are incapable of being blood splatter experts. That's not a public controversy. That's an attack on your client. That's what I believe, Your Honor. And that's why I don't believe that he's a public figure even limited, because the controversy that you have to have is somebody like an underwager in the child sex abuse cases. You've got one expert saying that this kind of testimony is totally admissible and this kind of testimony is wrong and it's unscientific. This kind of testimony is the only kind that's good. That may be the public controversy, though I have serious doubts that a lot of people are really thinking about blood splatter evidence. There's a very limited group of people that care about that. But some of the statements, if I'm remembering correctly, were made by McDonnell, were made in the context of high-profile trials where Mr. Englert was testifying. So at least with respect to those particular statements, it would seem that your client had injected himself into the controversy surrounding that trial. Well, would a medical doctor who testified as an expert witness in a plaintiff's personal quadriplegic injury case that had great public interest because it was a perhaps someone who was well-known in the community who was the plaintiff, would that doctor become a limited public figure because he participated in that trial? I would hope not. I would hope that it doesn't go that far. And because it's got to be more than that. It's got to be more than simply I'm going – I'm very qualified. I go to court. I'm an expert. And prosecutors like me when I work for them. Defense lawyers like me when I work for them. So are you saying that an expert witness, no matter how high-profile the trial, so like the O.J. Simpson trial or whatever, the expert witness who testifies about gloves fitting would not be a limited public figure for slurs made about his ability, say, in the context of that trial? Are you saying that person would not be a limited public figure? I didn't hear – I'm sorry, Your Honor. I didn't hear your last statement, would not be because – So an expert who makes statements in a high-profile, controversial trial and then other people say he doesn't know what he's talking about, would he be able to say I'm not a limited public figure for this purpose? I think the case law would support that he's not a limited public figure if it's a single trial. It just so happened to take eight months for him to testify, and it happens to be a controversial trial. If what it is going on is as in Underwager, where there is a controversy as to whether there is – this is scientific or this is – the Bendectin case, for example, there was an expert witness who testified in front of the FDA as to whether or not Bendectin was related to autism. That was a public controversy because there was plenty of controversy about whether this particular drug was bringing about this kind of a disease. And so when he went as an expert wanting to make sure one side or the other wins as to whether this is admissible or whether this is true, that makes him a limited public figure. Mr. Engler doesn't care who wins the case. He's there to testify as to what his analysis is. He's not trying to say if there is a public controversy, for example, that we don't like people to be expert witnesses who have degrees. Doesn't Mr. Engler normally testify for the prosecution? Doesn't Mr. McDonald normally testify for the defense? I don't know that it's always, Your Honor, but I think Mr. Engler has testified. In fact, one of the reasons that we know about it in Oregon is it was a defense lawyer that called him and said this stuff was here. Your Honor, may I save the last few minutes? Thank you very much. Good morning. I'm Mark Davidson from Williams-Castner, and I represent the defendant in appellee Herbert McDowell. I want to start, before I get to the reasons why the plaintiff was a public figure, with the reason why that's so important. The reason why the plaintiff was a public figure is because he had the burden of proving that the statements were false and that they were made with actual knowledge or recklessness. You don't have to justify that rule of law. We're subject to it. And I believe what's key here is the lack of evidence of falsity. So they have to show that he was not a public figure. Or we need to show that he was a public figure, because if he was a public figure and it's three elements. One, that he thrust himself out. Two, on a particular public controversy. And three, to influence the resolution of the issues. Now, address those, would you please? Don't address the first. He obviously did thrust himself out as an expert witness. But did he thrust himself out on a particular public controversy to influence the resolution of issues of that controversy? Identify, if you would, what the controversy is. What's the public controversy? What's better evidence? That's one, Your Honor. What is the controversy? Is it junk science or is it real science? That's exactly right, Your Honor. Is that the issue? It is. In fact, the very first of these 12 statements, the very first, dating back to 1993, identifies what the public controversy is. In Mr. McDonald's letter, he says he's talking about the four known Frankenstein monsters, although he later says he's not including the plant, but he's talking about the identification. As a rule, they do not have a scientific background. He talks about how they have gone beyond what they were taught, their interpretation of bloodstain patterns to unreasonable lengths. So he's criticizing individuals, but his field is bloodstain evidence. He's not saying that the entire field is worthless. He's saying these individuals don't have the skills and confidence, and he makes the same claim about Mr. Allert. So I don't see how that amounts to a controversy over the topic you mentioned. I agree. Well, the broader controversy has to do with whether someone who is not a scientist can offer forensic scientific testimony regarding bloodstains. He talks in here repeatedly about the need for forensic scientific testimony to come from a scientist. But that has been already determined by the Supreme Court of the United States. Non-scientific evidence is admissible as expert testimony in the Kumru Tire case. This is a 1993 letter. It talks about the public controversy. What is the controversy? The question is, did he thrust himself? Did the plaintiff? You're saying the controversy is, can non-expert witnesses testify as experts? Can non-credentialed witnesses testify as experts? Right? That's not a question of whether blood spatter evidence is junk science or not, but whether this person can testify as an expert if he doesn't have the proper degrees. It's broader. Can a non-scientist testify as to forensic evidence, particularly with respect to blood spatter? But I'm telling you, in the Kumru Tire case, the Supreme Court has said that such evidence is admissible. It's not really a controversy anymore. I don't think it's that narrow, Your Honor, because clearly the plaintiff has been testifying, testified in over 375 cases. Of course. The issue is, and there's two main issues. Your man is saying he shouldn't testify because he's not credentialed. Not that blood spatter evidence is junk science, because your man is clearly on the side of blood splatter evidence being scientific, but this man's not a scientist. That's your position, right? And he's not talking in this letter even about the plaintiff. He's talking about generally whether people who are not scientists should. . . That's the public controversy, whether non-scientists should testify as to blood splatter evidence. That's your position. That is, and that is one of the public controversies. But I also think a separate public controversy has to do with the blood splatter evidence. This is a development in criminology. And at the time, in 1993, back then and even now, there are differences of opinion as to the merits of that and whether or not from a public controversy standpoint there should be admissibility of blood splatter evidence. Which controversy is it that you say the plaintiff is a public figure? I say he and she, both of those. And I think there's a third, and the third has to do with the specific trial. Which position is the plaintiff supposedly taking, that blood splatter evidence is junk science or that blood splatter evidence is real science? Well, that goes to what his testimony was. I think the real issue is did he inject himself into the controversy? That's the key issue. What side of the controversy is he on? He's trying to influence the resolution of issues. What result does plaintiff seek? He seeks the result that someone who's not a scientist should be able to testify as to forensic science, particularly with the fact that Not on the issue of whether blood splatter evidence is junk science or real science. No, he doesn't testify as to that controversy in particular. Okay. So then the only public controversy here between the two is that your man is saying the public controversy is that noncredentialed expert witnesses should not testify on blood splatter evidence. True? I would characterize that as a little too narrow, Your Honor, because I do think if you look at the issue of whether or not someone who's not a scientist should be able to testify as to forensic science issues. That's how I would characterize that controversy. And clearly that was the controversy. Clearly, I'll take a third time around. Tire wear can be testified to as a causative element in product defect liability cases by a person who is not a resume-qualified scientist. That's the Kumro case. So you're on the losing side with a potent adversary called the Supreme Court of the United States. But the issue, Your Honor, is was there a public controversy? Not how it turned out, not whether there's a definitive Supreme Court decision. Is there a public controversy? And clearly as to both blood splatter and the qualifications of this non-scientist to testify are public controversies. There was also the third issue, which is the public controversy of particular trials. The prominence of this individual is not just with respect to he's an expert witness. In the plaintiffs that made the comment, the district court concluded plaintiff was a public figure simply because his business is testifying as an expert. So in the individual cases where there is a high-profile case, opposing counsel says that this is not enough to be an expert in a high-profile case. I assume you're saying it is enough to be an expert in a high-profile case. But I don't see, even if we agreed with you, that that would cover anything but the comments that were made in connection with that high-profile case. Is that wrong? I agree with Your Honor, except to the extent that the comments in that particular case are made in a broader sense. So, for example, someone talked about the testimony given at that trial in a broad sense as to the merits of particular types of blood splatter testimony. But generally, I do agree with that comment. So that would only cover whatever comments were made in connection with the, I think it was an Idaho trial, there was another trial. And then the other comments would not, he would not be a limited public figure under that analysis for those other statements. Is that right? I would agree with that, Your Honor. And so then we're left with the controversy, which you say is a controversy between who is qualified to testify at a trial. And why is that a controversy? I mean, we're asking you to identify a controversy for us, but there wasn't I didn't see any newspaper articles or any public facts alleged about public events where that was a high-profile issue that the public was interested in. I guess it will come back full circle to what I was arguing earlier, which is to say when you have a known public controversy, such as the merits of blood splatter evidence and the ability of non-scientists to testify to forensic science at trial, and then you have a trial that deals with those very issues and there's comments made about it, those have to be seen in the context of the larger public controversy. I'd like, if I might, Your Honor, to Why don't you go to the issue of whether these statements, especially the ones regarding whether Englert is a Frankenstein monster or Bin Laden of bloodstains, is simply figurative hyperbolic language and is indeed a statement of opinion, not a fact, and therefore not defamatory. I will address that, Your Honor. Slurs and name-calling are not actionable. What's actionable is a statement of fact. What's significant here is that there's only one statement, just one in this entire flow. You think calling somebody a liar is an opinion or a statement of fact? I think it's an opinion. But I also will say that what's critical about Aren't we banned by Oregon law? Isn't this a question of state law? Because Oregon law, doesn't Oregon law say that calling someone a liar is per se defamatory? What Oregon law says is that if someone is accused of a crime or if they're accused of something that would defame them in their profession So being called a perjurer isn't the gist of the claim that he lies on the stand for whoever hires him? I want to address that point specifically. There's only one of the 12 statements in which he was called a perjurer. Only one. And that was number five, the Crank Affidavit. In that affidavit signed in 2006, Mr. Crank related a conversation in April of 2000, some six years earlier, in which he said that he was told by the defendant that the plaintiff committed perjury. There's two other statements of those 12 in which a comment was made that for money he would lie in court or that He would. He would. That's the subjunctive, not the indicative. That's exactly right. The only indicative is the Crank Affidavit. What's significant about that is that the plaintiff knew about it in 2000. He testified that. And so that is barred by the statute of limitations. The other reason it's barred is that statement was made in West Virginia. The Court held that there's personal jurisdiction over the defendant in this State, even though he hasn't been here since 1979, because of the republication of the written statements. But the verbal statements, like the statement made to Mr. Crank, there's no connection. There's no evidence that it was republished in this State. So a sole single statement made in West Virginia in the year 2000 that the plaintiff didn't act on for more than five years is barred. That's the only one that deals with the issue of perjury. The other statements are statements that are generally fall in the category of slurs or name-calling or statements of opinion. They're the kind of statements that the cases hold are not actionable. And, of course, if the Court finds that he was a public figure, then he has the burden of proving falsity. What's amazing to me is that his entire extensive record, there's absolutely no evidence that these statements were false. Not a single affidavit of falsity. And so they're left in the room. Kennedy. How can you prove the falsity of a statement that he would commit perjury if he hasn't committed perjury? That's not an indicative statement. That's not a statement that is actionable. But a statement. So you can't criticize him for saying, for not bringing proof that he would not commit perjury. He can say, I wouldn't commit perjury. Is that proof? But that is an example, Your Honor, why these statements aren't actionable. Because they're not capable of proof or falsity one way or the other. How do you prove he was a Frankenstein monster? How do you prove that he was a bin Laden of bloodstains? Those are statements that are statements of opinion. They're not factual statements upon which proof of falsity or truth can be made. And that's generally what we have here. The key to this case is examining the 12 statements individually. Six of them are barred by the statute of limitations, number 1 through 5 and number 10. I believe that the other two statements are all three of the verbal statements, number 5, number 10, and 11. There's no jurisdiction for them because they weren't published, republished in the State. And if you look carefully at the balance of the statements, they amount to a name-calling campaign. There's obviously a public controversy that my client feels very strongly about, and he voiced his opinions on this controversy. The plaintiff waited until after years of knowledge of this, of these statements, he finally brought the claim. But the key here is not what Judge Aiken said back in 2006 before discovery, before all the evidence was before her. The key is what she found in summary judgment. The key is that she found he was a public figure, which he was. She found that these statements were not capable of a defamatory nature, meaning. And I think it's also critical to recognize that so many of them are barred by the statute of limitation or the statute of repose or the lack of jurisdiction. Thank you very much. Thank you, Your Honor. Yes, I don't read that. Let's suppose he's not a public figure. I'm sorry, Your Honor. Let's suppose he's not a limited public figure. Again, I'm sorry, Your Honor. Let us suppose. Let's suppose he is. That Mr. Englert is not a limited public figure. If he's not a limited public figure. Do you agree with counsel that the first six of these statements were all time barred because they weren't brought within the statute of limitation? Well, I'm not so sure that that the record supports that as a matter of law, Your Honor. What's wrong with that? Because. You're talking about the 1993, 1994, 1998, 1999, and 2000. Okay. Some of. But when were they first published in Oregon is what's important in terms of. Because he didn't have a claim to bring in Oregon until he found out that they were published. They were published in California and the defendant were living in Oregon. He couldn't sue in Oregon. No, he does not. I think he could. He will. All right, next. Let's go to the next. Can I just ask about that? What are the elements of the discovery rule in Oregon? What would he have to know in order for the statute of limitations to start running on those contents? I don't know that there was publication of defamatory material in this jurisdiction. And the only way that it that the only exception to that is the Workman case, Workman v. Rajneesh case. And that was where there was the statements were made in a public forum. The defamatory statements were made in a public forum that was publicized on television and in the newspapers. And the court said under that circumstance, you don't wait for discovery when it is that somebody finds out about the statute of limitations. Thank you. But even so, if you eliminate those six, that doesn't end the case. If he's not a public figure, these are defamatory. They're defamatory under Oregon law simply to impute that the plaintiff is unable to do his profession. And this man is an expert witness. They call him a liar for hire. They say that he will perjure himself. That's his profession. Every case in Oregon says that, from the Cook case to the Althoffer case to the Benassi case to the Bendel case, every single Oregon case says that that's defamatory as a matter of law. You don't even have to prove damages. In fact, in Oregon, Your Honor, we're even stricter than in other states because we've adopted a portion of the restatement that says under any circumstance defamatory language, whether it's defamation per se or not, you don't have to prove special damages. What you're saying is that the statement that he would commit perjury. I don't read that as a subjunctive. I read that as a recognition of what this man said at the time, that McDonald perjures himself. Now, I appreciate the parsing of that with the word would rather than does. Let me finish my question. Counsel, can I finish my question? Sure. I'm sorry. Is it your contention under Oregon law, the statement of an opinion which would hold a person up to shame ridicule and obloquy is defamatory, even if it's not a statement of fact? I'm not going to go that far, Your Honor. Let me, if I might, please. Simpson is an Oregon district court case that says that calling someone a degenerate or pervert is not actionable, but it is defamatory, but it's not actionable because it's an opinion. That's a district court of Oregon case. I'm not sure I understand exactly that distinction. What's the difference between defamation, which is not actionable, isn't worth much, is it? Not worth very much, Your Honor. Drunk on the job. But that's a statement of fact. That's a statement of fact. He would have been drunk on the job had he had enough to drink. I'm just, if you might, Your Honor, I'm running over time. Yeah, you are running over time. And I don't believe, if it's pure opinion, I don't think that we can do that. Thank you. Thank you very much. Interesting case. Thanks, both counsel, for your good arguments. And the matter will be submitted.
judges: Tashima, Bea, Ikuta